U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2017 AUG -4 PM 3: 07

CLERK

BY ⟨tw⟩
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

MANSFIELD HELIFLIGHT, INC., )
)
    Plaintiff, Counter-Defendant, )
)
v. )   Case No. 2:16-cv-28
)
FREESTREAM AIRCRAFT USA, LTD., )
)
    Defendant, Cross-Plaintiff, )
    Counter-Plaintiff, )
)
and )
)
RUDOLPH MELK, JR., )
)
    Defendant, Cross-Defendant. )

FREESTREAM AIRCRAFT USA, LTD., )
)
    Third-Party Plaintiff, )
)
v. )
)
ERIC D. CHASE, )
)
    Third-Party Defendant. )

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
COUNTER-DEFENDANT MANSFIELD HELIFLIGHT, INC.'S AND THIRD-
PARTY DEFENDANT ERIC D. CHASE'S MOTION TO DISMISS**
(Doc. 41)

Mansfield Heliflight, Inc. ("Mansfield") initially brought this action against Freestream Aircraft USA, Ltd. ("Freestream") and Rudolph Melk, Jr. ("Mr. Melk") alleging six state-law causes of action arising out of the disputed purchase and sale of a Gulfstream IV jet ("the Aircraft"). On December 7, 2016, the court denied Freestream's motion to dismiss. *See Mansfield Heliflight, Inc. v. Freestream Aircraft USA, Ltd.*, 2016

WL 7176586 (D. Vt. Dec. 7, 2016) ("*Mansfield Heliflight I*"). Freestream thereafter served an Answer, Counterclaims, Crossclaim, and Third-Party Complaint in Response to the Complaint ("Counterclaims") (Doc. 35) against Mansfield and Eric D. Chase (collectively, the "Mansfield Defendants"). The Counterclaims allege the following causes of action: tortious interference with contract, tortious interference with a prospective business relationship, promissory estoppel, and defamation. Freestream also seeks common law indemnification from Mr. Melk.

Pending before the court is the Mansfield Defendants' March 6, 2017 motion to dismiss for failure to state a claim. (Doc. 41.) Freestream opposes the motion and requests leave to amend in the event the court grants any part of the motion. Following oral argument on June 30, 2017, the court took the pending motion under advisement.

The Mansfield Defendants are represented by Benjamin H. Klein, Esq. Freestream is represented by Patrick J. Rohan, Esq., Jonathan R. Voegele, Esq., Richard B. Drubel, Esq., and Courtney R. Rockett, Esq.

## I.     Factual Background and Procedural History.

The following facts are derived from the allegations in Freestream's Counterclaims. Freestream is a New Jersey corporation with its principal place of business in Teterboro, New Jersey. Mansfield is a Vermont corporation with its principal place of business in Milton, Vermont. Mr. Chase is Mansfield's President and resides in Burlington, Vermont.

On or about July 21, 2015, an entity allegedly affiliated with Mr. Melk known as Lima Mike Bravo, LLC ("LMB") agreed to purchase the Aircraft from Punj Lloyd Limited ("PLL"), an India-based aircraft seller (the "LMB Purchase Agreement"). A second contract provided for the Aircraft's resale (the "Resale Agreement") by LMB to an unnamed buyer represented by Freestream (the "resale buyer"). A third contract provided that the resale buyer would pay Freestream a commission in exchange for securing its right to purchase the Aircraft (the "Commission Agreement"). At the time, the Mansfield Defendants had knowledge of all three agreements because an Indian broker in New Delhi had kept them apprised of the status of any deal involving the

2

Aircraft. Thereafter, the Mansfield Defendants allegedly "concocted various schemes with [Mr.] Melk" to purchase the Aircraft and resell it to a buyer other than Freestream's resale buyer. (Doc. 35 at 31, ¶ 249.)

On or about August 2, 2015, Mansfield entered into an agreement to purchase the Aircraft from PLL (the "Mansfield Purchase Agreement"). Two days later, Mr. Melk filed a Federal Aviation Administration ("FAA") lien against the Aircraft for over $400,000 related to repairs, expenses, and inspections he purportedly performed. Freestream was allegedly unaware of Mr. Melk's intention to file the FAA lien and took no part in the decision to file it.

Sometime in early August 2015, Freestream's Executive Vice President, Connie Marrero, was informed by the escrow agent holding the resale buyer's non-refundable deposit on the Aircraft that there was an open file on the Aircraft by Leda Francis, an escrow agent with Jetstream Escrow & Title Service, Inc. ("Jetstream"). On or about August 14, 2015, Ms. Marrero contacted Ms. Francis, who stated that Jetstream held a refundable deposit for the purchase of the Aircraft. Ms. Francis did not disclose the identity of the parties to the deal. Ms. Marrero told Ms. Francis that if Ms. Francis's buyer wanted to contact her to discuss the matter, the buyer could do so.

On August 19, 2015, Mansfield's Chief Financial Officer and Director of Sales, Tina Lindberg, contacted Ms. Marrero and was "dismayed to learn" that Freestream and the resale buyer had entered into a "pre-buy" deal, that the resale buyer's deposit was non-refundable, and that the deal was nearer to closing than Mansfield's deal. *Id.* at 33, ¶ 261. Ms. Lindberg stated to Ms. Marrero that the deposit in Mansfield's deal was refundable, and confirmed that "the deal was not even close to closing." *Id.* Ms. Lindberg then attempted to persuade Ms. Marrero to pay Mansfield to "walk away" from its planned purchase of the Aircraft. *Id.* at 33, ¶ 262. Ms. Marrero refused and referred Ms. Lindberg to Mr. Melk because Freestream was merely representing the resale buyer. Ms. Lindberg then informed Ms. Marrero that Mansfield would terminate its deal if Mr. Melk agreed to pay Mansfield. On or about the following day, after negotiating with Mr.

3

Melk, the Mansfield Defendants promised to terminate the Mansfield Purchase Agreement. However, they did not fulfill that promise.

On or about August 25, 2015, the Mansfield Defendants "falsely stated that Freestream had filed a fraudulent lien with the FAA on the [Aircraft]." *Id.* at 34, ¶ 264. These false statements took the form of written and spoken communications to PLL, to Mansfield's escrow agent, and, upon information and belief, to a prospective resale buyer the Mansfield Defendants had identified. Freestream characterizes these alleged statements as a "false, unsubstantiated, and defamatory allegation of an unlawful act perpetrated on a federal agency" which "surpasses the norms of even the most rough-and-tumble of industries." *Id.* Freestream alleges that the business jet market consists of "an especially tight-knit community of buyers, sellers, and interconnected service providers" and that a market participant's reputation is critical to its success. *Id.* at 34, ¶ 265. Freestream further asserts that while it had a longstanding good reputation in the business jet market, the Mansfield Defendants' communications to other market participants that Freestream filed a fraudulent FAA lien harmed its reputation. At some point during this time period, the LMB Purchase Agreement failed to close. The resale buyer represented by Freestream was left with "hundreds of thousands of dollars in losses" as a result. *Id.* at 34, ¶ 266.

On or about September 25, 2015, the Mansfield Defendants and Mr. Melk allegedly met in Vermont and "agreed to leave Freestream and its buyer in the cold so they could resell the aircraft to some other buyer." *Id.* at 35, ¶ 267. However, PLL did not close a deal with the Mansfield Defendants and Mr. Melk. As a result, PLL "soured on their antics and refused to deal with either of them." *Id.* at 35, ¶ 269.

In or about early October of 2015, PLL sold the Aircraft to Freestream which, in turn, resold the Aircraft to Blackjet LLC ("Blackjet") on or about October 28, 2015. Blackjet was not affiliated with any prior deal involving Mr. Melk or the Mansfield Defendants. Freestream earned a commission as a result of this sale. Mr. Melk "was paid some amount" for mechanical services and out-of-pocket expenses incurred in

4

connection with rendering the Aircraft flightworthy and ferrying it to the United States. *Id.* at 10, ¶ 79.

## II.  Conclusions of Law and Analysis.

### A.  Standard of Review.

Pursuant to Fed. R. Civ. P. 12(b)(6), the Mansfield Defendants move to dismiss Freestream's Counterclaims for failure to state a plausible claim for which relief can be granted. Ms. Lindberg filed a declaration in support of the motion (the "Lindberg Declaration") wherein she avers that on August 17, 2015 she was copied as a recipient of an email sent by PLL's President of Projects Monitoring which attached "a fully executed copy of the Aircraft Purchase and Sale Agreement between Punj Lloyd Limited and Lima Mike Bravo, LLC." (Doc. 41-1 at 1.) The Mansfield Defendants argue that § 1.3.1 of that document reveals that the LMB Purchase Agreement, by its terms, had not closed by the time the Mansfield Purchase Agreement was executed. They contend the court may consider the Lindberg Declaration and the document attached thereto because Freestream "refers directly to the agreement between PLL and the Melk-affiliated entity in its complaint[.]" (Doc. 41 at 14 n.4.)

"In considering a motion under Fed. R. Civ. P. 12(b)(6) to dismiss a complaint for failure to state a claim on which relief can be granted, the district court is normally required to look only to the allegations on the face of the complaint." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). While "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered[,]" *id.*, "[c]onsideration of extraneous material in judging the sufficiency of a complaint is at odds with the liberal pleading standard of Fed. R. Civ. P. 8(a)(2)[.]" *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002). For this reason, before a court may consider a document that is purportedly "integral" to, but not attached to or incorporated by reference in, the complaint, "it must be clear on the record that no dispute exists regarding the authenticity of the document." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Faulkner v. Beer*, 463, F.3d 130, 134 (2d Cir. 2006)) (internal quotation marks omitted); *see also* 35B C.J.S. Federal Civil

5

Procedure § 856 (commenting that "[i]n considering motions to dismiss a claim, primarily, the court will, for the purpose of the motion, consider the allegations in the complaint . . . and documents whose contents are alleged in the complaint and whose authenticity no party questions but which are not physically attached to the pleading").

The standard for consideration of matters outside the Counterclaims is not satisfied in this case. Freestream does not concede the authenticity of the document attached to the Lindberg Declaration, and maintains that discovery is required to establish the precise terms of the LMB Purchase Agreement. When presented with such extraneous material, "Rule 12(b) afford[s] two options" to the court: "exclude[] the extrinsic document[]" or "convert the motion to one for summary judgment and give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by Rule 56." *Chambers*, 282 F.3d at 154. As this case is in a nascent phase, the court declines to convert the pending motion into a motion for summary judgment. The document attached to the Lindberg Declaration (Doc. 41-2) will therefore not be considered in determining whether dismissal is appropriate.

In adjudicating a motion pursuant to Fed. R. Civ. P. 12(b)(6), the court is "guided by '[t]wo working principles[.]'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (alteration in original). First, "a court must accept as true all of the [factual] allegations contained in a complaint[,]" a "tenet" that is, however, "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss" and a claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678-79. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between

6

possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). "Determining whether a complaint states a plausible claim for relief will[]. . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### B. Whether Freestream Alleges a Plausible Claim of Tortious Interference with Contract.

The Mansfield Defendants contend that Freestream has not plausibly alleged a claim for tortious interference with contract. To state a claim under Vermont law,[1] a plaintiff must allege that the defendant intentionally and improperly caused a third party's non-performance of its contract with the plaintiff. *See Gifford v. Sun Data, Inc.*, 686 A.2d 472, 473 (Vt. 1996) (holding that plaintiff must show that defendant "intentionally and improperly induced [a third party] not to perform its contract"). The act of interference must be "wrongful or improper by some measure beyond the fact of interference itself" in order to support liability. *Kollar v. Martin*, 706 A.2d 945, 946 (Vt. 1997) (citation omitted).

In its Counterclaims, Freestream alleges that the Mansfield Defendants tortiously interfered with Freestream's Commission Agreement by committing three improper acts: (1) entering into the Mansfield Purchase Agreement knowing of the valid and pre-existing LMB Purchase Agreement and that Freestream stood to earn a commission if the transaction was consummated; (2) "scheming" with Mr. Melk to purchase the Aircraft and sell it to another buyer; and (3) defaming Freestream to PLL, Mansfield's escrow agent, and to others in the private aviation market. (Doc. 35 at 36, ¶ 273.) Freestream has alleged that the Mansfield Defendants knew of the Commission Agreement and undertook these acts with the intent of "disrupting, hindering, or preventing Freestream and its original buyer from performing their respective obligations under the [C]ommission [A]greement." *Id.* at 36, ¶ 274.

---

[1] For purposes of the pending motion, the parties assume that Vermont law applies to Freestream's Counterclaims. Without deciding the issue, the court proceeds on that assumption as well.

7

In determining whether the Mansfield Defendants' alleged conduct is "improper," the court is guided by the Restatement (Second) of Torts "which directs [the court] to consider the motives and actions of [the alleged tortfeasor], the relations of the parties, and their respective interests." *Gifford*, 686 A.2d at 474. The Mansfield Defendants' allegedly defamatory statements that Freestream filed a false FAA lien on the Aircraft are sufficiently "improper" to support liability for tortious interference with contract. *See* Restatement (Second) of Torts § 767 cmt. c (1979) (commenting that "[f]raudulent misrepresentations are also ordinarily a wrongful means of interference and make an interference improper"); *see also Skaskiw v. Vt. Agency of Agriculture*, 2014 VT 133, ¶ 26, 198 Vt. 187, 200, 112 A.3d 1277, 1288 (explaining that "actions are improper if they are not justified"). Although the Mansfield Defendants contend that their alleged defamation, which took place on or about August 25, 2015, could not plausibly have interfered with the LMB Purchase Agreement, this contention depends on a disputed factual issue regarding whether and when the LMB Purchase Agreement was finalized and could have closed. Because the court must view the facts in the light most favorable to the non-moving party and cannot resolve factual disputes, dismissal on this basis would be improper. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 175 (2d Cir. 2015) (reversing the district court's dismissal of securities fraud claims because the district court improperly "discount[ed] Plaintiffs' account" by "proffering benign alternative explanations"); *Semon v. Rock of Ages Corp.*, 2011 WL 13112212, at *9 (D. Vt. Dec. 23, 2011) (denying motion to dismiss because "the determination of the applicability of Vermont's safe harbor provisions must be based upon a factual record not before the court").

The Mansfield Defendants' further contention that the causal relationship between their alleged conduct and the resale buyer's non-performance of the Commission Agreement is too attenuated to support liability for tortious interference with contract presents a similar question of fact. While the remoteness of the Mansfield Defendants' conduct "conduces toward a finding that the interference was not improper[,]" this consideration "may be controverted by the factor of motive if it was the actor's primary

8

purpose to interfere with [the downstream contract], or perhaps by the factor of the actor's conduct if that conduct was inherently unlawful or independently tortious." Restatement (Second) of Torts § 767 cmt. h; *see also id.* § 766 cmt. p (commenting that "if A induces B to break a contract with C, persons other than C who may be harmed by the action as, for example, his employees or suppliers, are not within the scope of the protection afforded by this rule, *unless A intends to affect them*") (emphasis supplied). Freestream's causation allegations are not so attenuated as to warrant dismissal at this time. *See, e.g., Mansfield Heliflight I*, 2016 WL 7176586, at *14 (holding that "drawing all reasonable inferences in its favor, Plaintiff has adequately alleged that PLL or other third-party financiers, or both, would have terminated the sale of the Aircraft solely because Defendants had allegedly improperly filed a fraudulent FAA lien against the Aircraft's title").

Because Freestream has plausibly alleged that the Mansfield Defendants intentionally interfered with the Commission Agreement by improper means, the Mansfield Defendants' motion to dismiss Freestream's counterclaim for tortious interference with contract is DENIED. The court need not and does not address whether the Mansfield Defendants' other alleged "improper acts" are sufficient to state a claim. *See Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at *18 n.33 (E.D.N.Y. July 21, 2010) (stating that where one of plaintiffs' arguments "adequately pled" sufficient facts to survive a motion to dismiss for failure to state a claim, the court need not consider plaintiffs' alternative argument).

### C. Whether Freestream Alleges a Plausible Claim of Tortious Interference with a Prospective Business Relationship.

Based on the same nucleus of facts underpinning its tortious interference with contract counterclaim, Freestream alleges that the Mansfield Defendants committed tortious interference with a prospective business relationship. To state a claim, a plaintiff must plausibly allege:

> (1) the existence of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an intentional act of interference on the part of the interferer; (4) damage to the

9

party whose relationship or expectancy was disrupted; and (5) proof that the interference caused the harm sustained.

*J.A. Morrissey, Inc. v. Smejkal*, 2010 VT 66, ¶ 21, 188 Vt. 245, 255, 6 A.3d 701, 708-09 (citing *Gifford*, 686 A.2d at 474 n.2). The tort "protects the same interest in stable economic relationships as does the tort of interference with contract, but applies to business relationships not formally reduced to contract." *Gifford*, 686 A.2d at 474. "Competitive business practices" generally do not create liability so that if a defendant's interference is "intended to advance its own competing interests, the claim will fail unless the defendant's methods are criminal or fraudulent." *Id.* at 475.

Freestream alleges the existence of a business relationship with its resale buyer, and further alleges Mansfield Defendants' knowledge of the relationship. *See Mansfield I*, 2016 WL 7176586, at *15 (denying motion to dismiss because Mansfield alleged "it had a prospective business relationship with an 'identified' third-party buyer"). Freestream further alleges that the Mansfield Defendants intentionally defamed Freestream for the purpose of interfering with this business relationship. These allegations, if established, are beyond mere "competitive business practices[.]" *Cf. Gifford*, 686 A.2d at 475; Restatement (Second) of Torts § 766 cmt. c ("Historically the liability for tortious interference with advantageous economic relations developed first in cases of intentional prevention of prospective dealings, by violence, fraud or defamation—conduct that was essentially tortious in its nature, either to the third party or to the injured party."). The Mansfield Defendants nonetheless argue that Freestream cannot plausibly allege harm as a result of their alleged tortious interference because Freestream ultimately earned a commission after PLL sold the Aircraft to Freestream and Freestream resold it to Blackjet. Although this appears undisputed, nothing before the court permits it to find that this made Freestream whole. *See Basso v. New York Univ.*, 2017 WL 1019505, at *4 (S.D.N.Y. Feb. 24, 2017) (holding that "[t]o the extent that NYU contends Plaintiffs' damages are speculative, these are issues of fact that are not suitable to be resolved at the motion to dismiss stage" and that "Plaintiffs have sufficiently pleaded damages such that their claims are actionable"). As Freestream

points out, it alleges damages resulting from the non-performance of the Commission Agreement in addition to the commission it ultimately earned from the sale of the Aircraft to Blackjet. *See* Doc. 35 at 36, ¶ 275 (alleging that "Freestream could not realize the benefit of the bargain from its contract with its original buyer and has been exposed to further claims, damages, and potential liability due to the failed transaction").

Accepting Freestream's factual allegations as true, it has adequately and plausibly alleged that the Mansfield Defendants tortiously interfered with its prospective business relationship with an identified resale buyer causing it harm that may be compensated by an award of damages. The Mansfield Defendants' motion to dismiss Freestream's counterclaim for tortious interference with a prospective business relationship is DENIED.

**D.  Whether Freestream Alleges a Plausible Claim of Promissory Estoppel.**

Freestream asserts a claim for promissory estoppel, alleging that "[t]he Mansfield Defendants made a promise to terminate their deal to purchase the [Aircraft] and allow the sale to [LMB] and resale to Freestream's original buyer if Melk agreed to pay the Mansfield Defendants" and that "Freestream, justifiably, and to its detriment, relied on the promise made by the Mansfield Defendants[.]" *Id.* at 38, ¶¶ 288, 290. The Mansfield Defendants respond that their alleged promises were made to Mr. Melk, not Freestream, and that Freestream has failed to plausibly allege that it reasonably relied on the promises or that the promises induced action or forbearance on its part.

"Establishment of promissory estoppel requires (1) a promise on which the promisor reasonably expects the promisee to take action or forbearance of a substantial character; (2) the promise induced a definite and substantial action or forbearance; and (3) injustice can be avoided only through the enforcement of the promise." *Green Mountain Inv. Corp. v. Flaim*, 807 A.2d 461, 464 (Vt. 2002). "[T]he doctrine of promissory estoppel is applicable only where there is no agreement, where the promise is gratuitous, and there is unbargained-for reliance." *Chomicky v. Buttolph*, 513 A.2d 1174, 1176 n.* (Vt. 1986).

11

In its Counterclaims, Freestream alleges that on or about August 20, 2015, "the Mansfield Defendants promised to terminate their alleged agreement to purchase the [Aircraft]" so that the sale to LMB could proceed. (Doc. 35 at 34, ¶ 263.) Freestream further alleges that it relied on those promises and provided a "boilerplate draft" of an agreement whereby Mr. Melk would pay Mansfield to abandon the Mansfield Purchase Agreement. *Id.* at 7 ¶ 44. Freestream has thus plausibly alleged that the promises were made to it, not to Mr. Melk.

Freestream, however, fails to allege the further element of reliance beyond a conclusory allegation that "the Mansfield Defendants' promise reasonably should have been expected to induce an action or forbearance of a definite and substantial character on the part of Freestream." *Id.* at 38, ¶ 289. It is not enough to assert that had it known that the Mansfield Defendants were not going to keep this promise, "it would have taken action to protect itself[,]" *id.* at 38, ¶ 291, because this allegation merely restates an element of a promissory estoppel claim by asserting, without any factual detail, that forbearance occurred. Such "threadbare recitals of the elements of a cause of action" are insufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

Similarly, Freestream's allegation that it "continued to perform its obligations under its commission agreement with its original buyer" (Doc. 35 at 38, ¶ 290) fails to allege a "detrimental change of position" on its part because Freestream does not assert that it was not otherwise obligated to perform under this contract. *See Larose v. Agway, Inc.*, 508 A.2d 1364, 1366 (Vt. 1986) (stating that "a pleading which does not allege a detrimental change of position in reliance on the claimed promise falls short of stating a cause of action based on promissory estoppel"), *overruled on other grounds by Taylor v. Nat. Life Ins. Co.*, 652 A.2d 466 (Vt. 1993); *see also Miller v. HSBC Bank U.S.A., N.A.*, 2015 WL 585589, at *6 (S.D.N.Y. Feb. 11, 2015) (dismissing promissory estoppel claim where the "allegations [we]re impermissibly vague and conclusory").

Because Freestream has failed to plausibly allege the essential elements of a promissory estoppel claim, the Mansfield Defendants' motion to dismiss for failure to state a claim is GRANTED. *See Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89 (2d

Cir. 2013) (affirming dismissal of complaint and holding that "[w]hatever the precise level of specificity that was required of the complaint, [plaintiff] at least was required to do more than repeat the language of the statute").

### E. Whether Freestream Alleges a Plausible Claim of Defamation.

Under Vermont law, "the familiar elements of defamation, which comprises libel and slander," consist of the following:

> (1) a false and defamatory statement concerning another; (2) some negligence, or greater fault, in publishing the statement; (3) publication to at least one third person; (4) lack of privilege in the publication; (5) special damages, unless actionable per se; and (6) some actual harm so as to warrant compensatory damages.

*Russin v. Wesson*, 2008 VT 22, ¶ 5, 183 Vt. 301, 303, 949 A.2d 1019, 1020 (quoting *Lent v. Huntoon*, 470 A.2d 1162, 1168 (Vt. 1983)). "A defamatory statement is one that tends to 'blacken the reputation of the plaintiff and expose her to public hatred, contempt or ridicule.'" *Davis v. Am. Legion, Dep't of Vt.*, 2014 VT 134, ¶ 22, 198 Vt. 204, 213, 114 A.3d 99, 106 (quoting *Kinsley v. Herald & Globe Ass'n*, 34 A.2d 99, 101 (Vt. 1943)).

"[T]he mode of pleading defamation is governed by Fed. R. Civ. P. 8, which requires only that plaintiff's charges be set forth in a short and concise statement[.]" *Geisler v. Petrocelli*, 616 F.2d 636, 640 (2d Cir. 1980); *see also* Fed. R. Civ. P. 8(a)(2) (requiring that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A defamation plaintiff "need not specifically plead the alleged defamatory words but must provide the opposing party with sufficient notice of the communications complained of to enable him to defend himself." *Benning v. Corp. of Marlboro Coll.*, 2014 WL 3844217, at *4 (D. Vt. Aug. 5, 2014) (internal quotation marks omitted). "In assessing whether a defamation claim has been plead with sufficient particularity, courts look to whether said complaint references the alleged defamatory statement, identifies who made the statement, when it was made, the context in which it was made, whether it was made orally or in writing and whether it was made to a third party." *Bloom v. Fox News of Los Angeles*, 528 F. Supp. 2d 69, 74 (E.D.N.Y. 2007) (internal quotation marks omitted); *see also Solomon v. Atlantis Dev., Inc.*, 516

A.2d 132, 137-38 (Vt. 1986) (citing Vt. R. Civ. P. 8(a) and concluding that "[a]lthough the defendant failed to plead the defamatory statements *in haec verba*, he fully informed the plaintiff of the nature and subject matter of the counterclaim").

Here, Freestream has alleged that the Mansfield Defendants' statements that it had filed a false FAA lien on the Aircraft constitute defamation. The Mansfield Defendants do not dispute the false and defamatory nature of the statements, nor do they contest that Freestream has alleged it has suffered damages as a result. *See* Doc. 35 at 34, ¶ 265 ("The Mansfield Defendants' statements to industry participants that Freestream would undertake an unlawful and unethical act such as filing a fraudulent lien with a federal agency has harmed Freestream."). They nonetheless assert that Freestream's allegations lack sufficient specificity to enable them to defend themselves, pointing out that Freestream does not identify the alleged speaker by name.

While its Counterclaims could have provided more clarity as to the speaker's identity, Freestream alleges that the "Mansfield Defendants" made these statements, and further defines the "Mansfield Defendants" to include both Mansfield and Mr. Chase, *see id.* at 30, ¶ 247 (stating that "Mansfield and Chase are collectively referred to below as the Mansfield Defendants"). It also alleges sufficient detail regarding the alleged defamation, including its nature and subject matter, the approximate date on which the statements were made, and the alleged recipients, to provide sufficient notice to permit the Mansfield Defendants to respond. *See Linell v. N.Y.C. Dep't of Educ.*, 2017 WL 880853, at *3 (E.D.N.Y. Mar. 3, 2017) (holding that plaintiff's allegations were "sufficiently specific" to "put defendants on notice of the substance of the communication . . ., who made the communication . . ., when it was made . . ., and to whom it was published"). If Mr. Chase claims he did not make the statements in question, he may so indicate in his Answer. If Mansfield claims no officer or agent made the statements on its behalf, it may include this denial in its Answer. Because the defamation claim is plausibly and sufficiently pled, the court DENIES the Mansfield Defendants' motion to dismiss Freestream's defamation counterclaim for failure to state a claim.

14

## F. Whether Freestream Plausibly Alleges Any Claims Against Mr. Chase.

Mr. Chase moves to dismiss Freestream's claims against him, and argues that these third-party claims constitute "an effort to harass, delay, and needlessly increase the cost of this litigation[.]" (Doc. 41 at 23.) "Vermont has recognized that a corporate officer may be held liable for a tort in which the officer personally participated even though the corporation may also be held liable." *Sec'y, Agency of Nat. Res. v. Upper Valley Reg'l Landfill Corp.*, 705 A.2d 1001, 1010 (Vt. 1997). The Vermont Supreme Court has cited with approval a decision of the United States Court of Appeals for the Tenth Circuit, which states as follows:

> "It is the general rule that if an officer or agent of a corporation directs or participates actively in the commission of a tortious act or an act from which a tort necessarily follows or may reasonably be expected to follow, he is personally liable to a third person for injuries proximately resulting therefrom. But merely being an officer or agent of a corporation does not render one personally liable for a tortious act of the corporation. Specific direction or sanction of, or *active participation or cooperation in,* a positively wrongful act of commission or omission which operates to the injury or prejudice of the complaining party is necessary to generate individual liability in damages of an officer or agent of a corporation for the tort of the corporation."

*Prive v. Vt. Asbestos Grp.*, 2010 VT 2, ¶ 17, 187 Vt. 280, 289, 992 A.2d 1035, 1041 (quoting *Lobato v. Pay Less Drug Stores, Inc.*, 261 F.2d 406, 408-09 (10th Cir. 1958)). To satisfy this rule, the plaintiff must show "some form of participation by the officer in the tort, or at least show that the officer directed, controlled, approved, or ratified the decision which led to the plaintiff's injury." *Id.* ¶ 19 (quoting 3A Fletcher Cyc. Corp. § 1135, at 54 (2002)) (alteration and internal quotation marks omitted).

Mr. Chase argues that Freestream does not attribute a single promise, defamatory statement, or tortious act to him, and asserts that his name does not appear in Freestream's Counterclaims. Freestream's allegations, however, repeatedly refer to the "Mansfield Defendants" which is defined to include Mr. Chase. Contrary to Mr. Chase's arguments, this does not constitute improper "group pleading." *See Gingras v. Rosette*, 2016 WL 2932163, at *21 (D. Vt. May 18, 2016) (denying motion to dismiss on grounds

15

of "group pleading" because "[t]here is no uncertainty about the allegations against" inter-related defendants); *see also Ingris v. Borough of Caldwell*, 2015 WL 3613499, at *5 (D.N.J. June 9, 2015) (holding that plaintiff "engaged in impermissibly vague group pleading" by "mak[ing] collective references to twenty-three different defendants" and "when pleading each of his proposed causes of action" had "refer[red] to 'all defendants named in this count', without describing what any particular defendant actually did, or how those alleged activities might be actionable under the law").

Freestream further alleges that the Mansfield Defendants made defamatory statements regarding Freestream to Mansfield's escrow agent, PLL, and to another potential resale buyer of the Aircraft. This allegedly tortious conduct may subject Mr. Chase, as Mansfield's principal, to individual liability. As a leading treatise notes:

> [T]he same individual who acts for the same corporation in the same capacity in taking action deemed tortious or criminal loses the corporate cloak and is held individually liable along with the enterprise. This liability derives not from corporations statutes, but from the common law and it does not require piercing the corporate veil.

2 F. O'Neal & R. Thompson, Close Corporations and LLCs: Law and Practice § 8:22 (rev. 3d. ed.) (cited with approval, *Prive*, 2010 VT ¶ 19); *accord* Restatement (Second) of Agency § 343 (1958) ("An agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal[.]"). Freestream's allegations of personal participation by Mr. Chase in tortious conduct are therefore sufficient to withstand a motion to dismiss.[2] Mr. Chase's motion to dismiss Freestream's Counterclaims against him is therefore DENIED.

---

[2] *See Prive v. Vt. Asbestos Grp.*, 2010 VT 2, ¶ 19, 187 Vt. 280, 290-91, 992 A.2d 1035, 1042 (rejecting the "assum[ption] that a corporate officer's corporate acts are always mutually exclusive from the officer's personal acts" and reaffirming that "there are some actions for which *both* the corporation and the corporate officer can be held liable—namely, those actions in which the corporate officer 'personally participated,' as is alleged here"); *see also Nashef v. AADCO Med., Inc.*, No. 12-cv-243, slip op. at 6 (D. Vt. Apr. 29, 2013) (denying motion to dismiss by corporate officers because plaintiff had sufficiently alleged their "active participation" in tortious activity); *Bentley v. Northshore Dev., Inc.*, 935 F. Supp. 500, 504 & n.3 (D. Vt. 1996) (denying motion to dismiss by principals of corporate defendant and holding that "piercing the corporate

### G. Leave to Amend.

Freestream requests leave to amend in the event the court grants any part of the motion to dismiss. Fed. R. Civ. P. 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave" which "[t]he court should freely give . . . when justice so requires." "When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (quoting *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990)) (alteration and internal quotation marks omitted). In their reply brief, the Mansfield Defendants do not oppose Freestream's request for leave to amend. Because Freestream's promissory estoppel counterclaim may be amended in a manner that is not futile, the court GRANTS Freestream leave to amend that counterclaim within fourteen (14) days of this Opinion and Order.

### CONCLUSION

For the foregoing reasons, the court GRANTS IN PART AND DENIES IN PART the Mansfield Defendants' motion to dismiss for failure to state a claim (Doc. 41). Freestream's promissory estoppel counterclaim is DISMISSED WITHOUT PREJUDICE. The motion is DENIED in all other respects. Freestream is GRANTED leave to amend its promissory estoppel counterclaim within fourteen (14) days of this Opinion and Order.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 4th day of August, 2017.

Christina Reiss, Chief Judge
United States District Court

---

veil is not implicated in the instant matter" and that under Vermont law "the general rule is that corporate officers are liable for the torts in which they have individually participated").